UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| COREY CHARLES GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-045-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | |
| COUNTY GOVERNMENT, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Lexington-Fayette Urban County Government's ("LFUCG"), LFUCG Detention Center's, LFUCG Division of Police Chief Ronnie Bastin's, LFUCG Division of Police Officer Elizabeth Adams', and LFUCG Division of Police Officer William Persley's motion to dismiss.[1]  [Record No. 9] On June 10, 2013, the Court gave notice of its intention to convert the motion to dismiss to a motion for summary judgment and gave Plaintiff Corey Charles Gray fourteen days to submit any additional materials relevant to the summary judgment analysis.  [Record No. 14]  On June 24, 2013, Gray filed a supplement to his response, which included two additional documents for consideration.

---

1   This is the second motion to dismiss filed by the defendants.  The Court denied the defendants' first motion to dismiss on March 26, 2013, after Gray filed an Amended Complaint which rendered that motion moot.  [Record No. 7]

[Record No. 15]  For the reasons explained below, the Court will grant summary judgment and dismiss the claims asserted by Gray.

## I.

This matter arises from Gray's arrest and conviction for the May 18, 2010, robbery of a Subway Restaurant.  Officers Adams and Persley conducted an investigation of the robbery. On May 20, 2010, a witness identified Gray as the perpetrator.  Based on this identification, Gray was arrested and the officers obtained a search warrant for his home.  On March 18, 2011, while Gray was confined at the LFUCG Detention Center ("Detention Center"), he suffered an intracerebral hemorrhage, a type of stroke.  [Record No. 8 ¶ 11]  Gray was sent to a medical unit for monitoring when he began exhibiting symptoms of the stroke.  Approximately forty-eight minutes later, the Detention Center contacted the Lexington Fire & Emergency Services to provide emergency medical care.  [*Id.*]  Gray has since been awarded Social Security disability benefits as a result of the stroke.  [*Id.* ¶ 12]  On January 12, 2012, Gray pleaded guilty to the charge of second degree robbery.  Thereafter, he was given a suspended sentence of five years imprisonment and placed on probation.  [*Id.*]

Gray filed suit on February 18, 2013.  [Record No. 1]  In his Amended Complaint, Gray alleges that the Detention Center failed to reasonably respond to his medical condition and unreasonably delayed providing necessary medical care.  He contends that he was denied care for his serious medical needs, in violation of the Eighth Amendment to the United States Constitution.  Further, Gray asserts a claim for the denial of his due process rights under the Fourth Amendment on the ground that the identification procedure used by Officers Adams and

Persley was "so unduly prejudicial as to taint [his] identification and arrest." [Record No. 8 ¶ 19] The Amended Complaint also contains a claim against LFUCG for failure to train and failure to supervise, as well as a claim for municipal liability.  Gray seeks compensatory damages, punitive damages, costs, and attorney's fees.

## II.

Although the defendants originally sought to dismiss Gray's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, they relied on a number of matters outside the pleadings.  Thus, the Court converted the motion to a motion for summary judgment in accordance with Rule 12(d).  Gray challenges this decision in his response to the June 10, 2013 Notice.  [Record No. 14] However, contrary to Gray's assertions, this is an appropriate use of the Court's authority under Rule 12(d).  *See Logar v. W. Va. Univ. Bd. of Governors*, 493 F. App'x 460, 461-62 (4th Cir. 2012) (affirming district court's conversion of motion to dismiss to motion for summary judgment where the court "provided notice to the parties of its intention to convert the motions, and allowed the parties an opportunity to submit any additional information regarding the statute of limitations issue); *see also Wolfe v. Alexander*, No. 3:11-0751, 2012 WL 7060841, at *2 (M.D. Tenn. July 5, 2012); *Bell v. Zuercher*, No. 10-72-ART, 2012 WL 1868391, at *1 (E.D. Ky. May 22, 2012); *cf. Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010) (finding abuse of discretion where district court converted a Rule 12(b)(6) motion to a motion for summary judgment without notice to the *pro se* petitioner).

The cases cited by Gray in opposition to conversion of the defendants' motion are inapposite, as they do not address the application of Rule 12(d).  For example, in *Buckingham*

*v. United States*, 998 F.2d 735 (9th Cir. 1993), the Ninth Circuit reversed a district court's *sua sponte* entry of summary judgment due to its failure to provide adequate notice to the defendant. *Id.* at 742.   And in *LaBounty v. Coughlin*, 137 F.3d 68 (2d Cir. 1998), the Second Circuit reversed a district court's grant of summary judgment and remanded the case with directions to determine whether the defendants had produced certain documents requested by the plaintiff and, if not, to allow him the "opportunity to receive the information and to use it to oppose summary judgment." *Id.* at 72.   Gray's reliance on *Joseph v. Patterson*, 795 F.2d 549 (6th Cir. 1986), is similarly misplaced, as that case involved a district court's grant of a motion to dismiss, not a motion for summary judgment. *Id.* at 550.   Finally, *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990), concerned a district court's entry of summary judgment on the merits of a claim, despite the fact that discovery had been limited exclusively to an entirely different issue. *Id.* at 1519 ("[W]e must stress the unusual posture in which we confront this claim.").   This case does not stand for the proposition, as Gray suggests, that "where there has been no discovery allowed, the Court must use the [Rule] 12(b) standard for review."  [Record No. 15, p. 3]   Such a requirement would render Rule 12(d) superfluous, as it would almost never be appropriate to convert a motion to dismiss into one for summary judgment.

Accordingly, the Court will consider the matters raised in the defendants' motion to dismiss under the standards applicable to motions for summary judgment.   Entry of summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The party moving for summary judgment

bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, its opponent must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

The defendants assert that Gray's claims are time-barred. In an action brought under 42 U.S.C. § 1983, the Court must apply the state's "general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Kentucky, § 1983 claims are governed by the one-year statute of limitations contained in section 413.140(1)(a) of the Kentucky Revised Statutes ("KRS"). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). However, "federal law governs the question of when that limitations period begins to run." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). Under federal law, a cause of action accrues when the plaintiff "knew or should have known of the injury which forms the basis of [his] claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "A plaintiff has reason to

know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (internal quotation marks omitted).

The defendants maintain that the one-year statute of limitations had run for both of Gray's primary claims well before he filed suit on February 18, 2013. Gray counters that he did not discover the basis for his claims until a later date. Additionally, he contends that the statute of limitations was tolled for both causes of action. On June 24, 2013, Gray filed the following documents in support of his arguments: (1) an affidavit by Gray; and (2) a statement by Practical Nurse Larry Thomas, Jr., regarding the standard of care for a patient exhibiting the signs and symptoms of a stroke.[2]  [Record Nos. 15-1, 15-2]

As an initial matter, the Court rejects Gray's assertion that the statute of limitations for both causes of action were tolled until his conviction on March 14, 2012. [Record No. 15, pp. 1-2] Although he cites two cases for this proposition, neither compels the result he urges. First, *Ragland v. DiGiuro*, 352 S.W.3d 908 (Ky. Ct. App. 2010), is readily distinguishable from the facts and procedural posture of this action. In *Ragland*, the Kentucky Court of Appeals declined to apply the one-year statute of limitations to a wrongful death action, concluding that "the public policy of this Commonwealth would be furthered by allowing the family of a murder victim to wait until conviction of a defendant before filing suit." *Id.* at 911. This case does not purport to apply to all cases in which one of the parties is the defendant in a separate criminal

---

2       In his supplemental response, Gray argues that he "needs . . . discovery to develop the facts upon which he will depend to oppose a motion for summary judgment," and describes the matters on which he seeks discovery. [Record No. 15, pp. 3-4] Each item in this list of requested discovery concerns the merits of Gray's claim and, therefore is irrelevant to the Court's inquiry regarding the timeliness of this action.

action, as Gray seems to argue.  Therefore, it does not support the assertion that his claims were tolled until the date of his conviction.

Reliance on *Pedigo v. Breen*, 169 S.W.3d 831 (Ky. 2004), is similarly misplaced.  In *Pedigo*, the Kentucky Supreme Court considered the accrual of a cause of action for professional negligence and held that the statute of limitations begins to run when "the underlying case is final and non-appealable."  *Id.* at 833.  Because Gray has not brought a malpractice claim against his attorney in the state-court matter — indeed, he has not even named his attorney as a defendant in this case — the holding and reasoning in *Pedigo* does not apply here.

### A.    Count I – Deliberate Indifference to Serious Medical Needs

Gray seeks to recover for the defendants' alleged deliberate indifference to his medical needs in Count I of the Amended Complaint.  The defendants argue that Gray's cause of action for this claim accrued on the date of the injury (i.e., March 18, 2011) and, therefore, is time-barred.  Gray responds that he did not have the knowledge necessary for the statute of limitations to begin to run until May 3, 2012, when he read an article in the Lexington Herald Leader about the medical treatment provider at the Detention Center.  Additionally, he maintains that the statute of limitations was tolled under two separate statutory provisions.

As a general rule, a claim for deliberate indifference accrues when the inmate or detainee is denied the medical attention he seeks and requires.  *Hawkins v. Spitters*, 79 F. App'x 168, 169 (6th Cir. 2003); *see also Burns v. Hopkins Cnty. Gov't*, 4:09CV-4-M, 2009 WL 2589515, at *1 (W.D. Ky. Aug. 19, 2009) (concluding that deliberate indifference claim accrued "at the latest, on December 6 when he allegedly suffered a physical injury due to the inadequate medical

care"). Thus, federal law provides that the statute of limitations for Gray's Eighth Amendment claims began to run on March 18, 2011. However, Gray asserts that he did not know about the subject injury "until the time he reasonably discovered that the medical care he received at the Detention Center was through a contract with a private company, [Correctional Medical Services, Inc. ("CMS")], and that CMS had been shown to have failed to provide adequate medical care for inmates in the past." [Record No. 11, p. 3]

Gray is incorrect in arguing that Kentucky's "discovery rule" prevented his claim from accruing until May 3, 2012.[3] The discovery rule is a means "to identify the 'accrual' of a cause of action when an injury is not readily ascertainable or discoverable." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). Under this rule, the statute of limitations "begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Id.* (internal quotation marks omitted). The discovery rule "is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010).

---

3       Both parties conflate the issues of accrual and claim tolling. As explained previously, federal law governs the accrual of a cause of action under § 1983. However, Kentucky's discovery rule does not appear to differ significantly from the federal standard for determining the accrual of a cause of action. *Compare Ruff*, 258 F.3d at 500, *with McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999) ("[T]he discovery rule provides that a cause of action accrues when the injury is, or should have been, discovered."). Therefore, the Court will consider the defendants' arguments regarding the discovery rule when determining the accrual date for Gray's claims. Additionally, the Court will take those arguments into account as they relate to the tolling issue under KRS § 413.190.

Here, Gray's injury was ascertainable and discoverable on the date of the injury itself. Gray has made no allegations — either in his Amended Complaint or in the affidavit filed on June 24, 2013 — that the defendants in any way concealed the injury or the "identity of the wrongdoer." *McLain*, 16 S.W.3d at 326. Rather, Gray's knowledge of the facts concerning his injury put him on "notice to investigate" those facts. *Id.*; *see Hawkins*, 79 F. App'x at 169. That he did not undertake an investigation until much later does not change the date of accrual of the action. Therefore, the Court finds that the statute of limitations applicable to Gray's claim for deliberate indifference commenced on March 18, 2011, when the defendants allegedly delayed seeking emergency medical treatment for him.

Notwithstanding the March 18, 2011 accrual date, Gray asserts that the statute of limitations was tolled under KRS § 413.190 until he "reasonably discovered his cause[] of action through the media publicity in Lexington on May 3, 2012." [Record No. 11, p. 5] This tolling statute provides:

> When a cause of action . . . accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

KRS § 413.190(2). Obstruction may occur "where a defendant conceals a plaintiff's cause of action so that it could not be discovered by the exercise of ordinary diligence on the plaintiff's part." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 297 (Ky. Ct. App. 1993).

Gray cites *Greywolf v. Roman Catholic Diocese of Covington*, No. 2010-CA-000814-MR, 2011 WL 3361342 (Ky. Ct. App. Aug. 5, 2011), in support of his argument that the statute of

-9-

limitations did not begin to run until he read an article in the newspaper about CMS's treatment of inmates.  However, Gray has misconstrues *Greywolf*'s holding.  In that case, the plaintiff asserted claims against the Roman Catholic Diocese for sexual abuse by a priest.  Because the court found that the Diocese had actively concealed its knowledge of the priest's behavior in the past, it concluded that the statute of limitations was tolled under KRS § 413.190.  Despite this finding, the *Greywolf* court also determined that the statute of limitations began to run again in 1993 due to "extensive publicity in Lexington surrounding the sexual abuse scandal." *Id.* at *1.  The court opined that, "[n]otwithstanding the application of the tolling provision, the law still imposes a duty on a plaintiff to exercise reasonable care and diligence in pursuing a cause of action." *Id.* at *3.  In other words, a cause of action that can be discovered through ordinary diligence will not qualify for tolling under KRS § 413.190.[4] *Id.* (noting that a potential plaintiff cannot "remain oblivious to a cause of action when information was available that it existed").

Here, Gray has produced no evidence of any active concealment on the part of the defendants regarding his claims.  In fact, he has not alleged concealment or obstruction by employees of the Detention Center.  Instead, the Amended Complaint contains a single allegation that the "Detention Center should have known that CMS had a history of failing to meet basic health care requirements for inmates," not that it concealed that information.  [Record No. 8 ¶ 11]  Moreover, the defendants point out that there was local media coverage asserting inadequate medical attention at the Detention Center as early as September 1, 2010.  [Record No. 12, p. 7 (citing Josh Kegley, *Two Fayette Jail Nurses are Under Investigation in Inmate's*

---

4       Contrary to Gray's apparent assertion, "media attention" is not the only method of discovering a cause of action.

*Death*, Lexington Herald Leader, Sept. 1, 2010, *available at* www.kentucky.com/2010/09/01/1415035/two-fayette-jail-nurses-are-under.html)][5] Therefore, even if Gray were able to demonstrate some degree of concealment or obstruction by a defendant, it would not toll the cause of action under KRS § 413.190.  Gray "readily had access to" at least one newspaper article that provided notice that a claim may exist before his injury even occurred.  *Greywolf*, 2011 WL 3361342, at *3.  Therefore, the time for filing an action was not reset on May 3, 2012, when he actually obtained knowledge concerning his potential claims.

Finally, Gray argues that the statute of limitations was tolled under KRS § 413.170 because he was of unsound mind at the time the injury occurred.  This statute provides:

> If a person entitled to bring any action . . . was, at the time the cause of action accrued . . . of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person, whichever happens first, allowed to a person without the disability to bring the action after the right accrued.

KRS § 413.170(1).  Gray asserts that, since March 18, 2011, "he has been under a disability as a result of the brain hemmorage [sic] . . ."  [Record No. 11, p. 4]  The defendants counter that his actions in the underlying criminal matter belie the assertion of a disability and undermine Gray's reliance on KRS § 413.170(1).

To toll the statute of limitations under KRS § 413.170(1), a plaintiff must be of "such unsound mind as to render [him] incapable of managing [his] own affairs."  *Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988) (citing *Stair v. Gilbert*, 272 S.W. 732

---

5       The Court notes that this article and the article that Gray read on May 3, 2012 may actually be one and the same.  [*See* Record No. 15-1 ¶ i (describing Gray reading an article in the Lexington Herald Leader "about a man who had died at the Detention Center, [and] that . . . 2 nurses employed by CMS were suspended by the State Nursing Board")]

(1925)); *see Rigazio*, 853 S.W.2d at 297 (explaining that plaintiff must have "been rendered incapable of managing his own affairs").  Although it is typical for a statute of limitations to be tolled by a pre-existing disability, "the unsound-mind requirement is also met if the plaintiff is rendered of unsound mind by the injury itself."  *Powell v. Jacor Commc'ns Corporate*, 320 F.3d 599, 603 (6th Cir. 2003).  Further, whether a plaintiff is of unsound mind is a question of fact. *Gaylor*, 756 S.W.2d at 471.  "Once the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute."  *Id.* at 469.

In support of the application of the tolling provision, Gray points to the fact that he was awarded Social Security disability benefits after his injury.  According to Gray's Amended Complaint, the Social Security Administration found that Gray became disabled on March 18, 2011, and that he suffers from "left facial droop and siplopia [sic],[6] decreased right hip, knee and ankle strength, impaired balance and abnormal gait, hemiparesis, [and] double vision."  [Record No. 8 ¶ 12] Although serious, these ailments do not establish that Gray is of unsound mind for purposes of KRS § 413.170.  The standard for finding disability under the Social Security regulations is very different from the standard under KRS § 413.170.  To be disabled, a Social Security claimant must establish that he has an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  It is entirely possible for a person to be impaired to the point of being unable to work, but not so impaired as to be "incapable of managing [his] own affairs."  *Gaylor*, 756

---

6       This appears to be a misspelling of "diplopia," the medical term for double vision.

-12-

S.W.2d at 469.  And that certainly seems to be the case here, where Gray's impairments are primarily physical in nature, not mental.[7]

Additionally, Gray has submitted an affidavit regarding the severity of his injuries and their effects.  He states that he was in intensive care for seven days after losing consciousness at the Detention Center, after which he was "moved to the floor unit, neurology to continue treatment."  [Record No. 15-1 ¶ b]  Gray also asserts that his mother was appointed as his guardian on April 4, 2011, because he could not communicate after the stroke.  [*Id.* ¶ d; Record No. 8 ¶ 12]  Although not definitive,[8] this statement is the best evidence that Gray has proffered in support of his assertion that he was legally disabled by his March 18, 2011 injury.  Therefore, the Court will assume for the sake of argument that Gray has met his burden of proving that the stroke rendered him incapable of managing his own affairs, at least for some period of time.

But the defendants argue that, even if Gray was of unsound mind when his cause of action accrued, his disability did not continue.  In support of this argument, the defendants have submitted evidence which establishes that Gray: (1) was found competent to stand trial on December 5, 2011; and (2) entered a guilty plea on January 12, 2012.  [Record Nos. 10-1, 10-2, 13-3]  The defendants concede that "the existence of mental disability under the statute is a

---

7       Similarly, the statements by Practical Nurse Larry Thomas that stroke is "the leading cause of disability in the U.S." and that it may result in complications including "memory loss and/or thinking difficulties" do not establish that Gray was disabled in this way by the stroke that he suffered.  [Record No. 15-2]

8       Gray asserts that his mother was appointed as his guardian because he "could not communicate," not necessarily because he was incapable of making decisions or managing his affairs.  [Record No. 15-1 ¶ d]  Further, neither the affidavit nor the Amended Complaint indicate the type of guardianship, the duration of the guardianship, or the entity that appointed the guardian.

question of fact and does not depend upon a legal adjudication following a sanity inquest." *Carter v. Huffman*, 262 S.W.2d 690, 692 (Ky. 1953). However, they maintain that Gray "could not have been competent to stand trial on December 5, 2011, and subsequently knowingly, intelligently, and voluntarily waived his constitutional rights implicated in his guilty plea entered on January 12, 2012, yet remained legally incompetent for purposes of tolling of the statute of limitations beyond such events." [Record No. 12, p. 8] Accordingly, the defendants ask the Court to find that any disability that tolled the statute of limitations was removed more than a year before this action was filed.

Again, however, the Court notes that the standards for finding tolling due to "unsound mind" and for finding a criminal defendant competent are different. To determine competency to stand trial or to plead guilty, the trial court must consider "'whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Dunlap v. Commonwealth*, No. 2010-SC-000226-MR, 2013 WL 3121689, at *5 (Ky. June 20, 2013) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)) (alteration in original). The standard for tolling, as stated above, is more stringent. *See Gaylor*, 756 S.W.2d at 469. Under the differing standards, it would appear that a person could be of unsound mind for the purposes of the tolling statute yet competent to stand trial. In other words, a person may be incapable of managing his affairs, yet able to understand the charges against him and assist in his own defense. *See Atkins v. Virginia*, 536 U.S. 304, 318 (2002) ("Mentally retarded persons frequently know the difference between right and wrong and are competent to

stand trial."). Thus, a finding of unsound mind would imply incompetency, but the reverse is not necessarily true.

Despite the foregoing analysis, the Court concludes that Gray has failed to establish that he brought this action within one year "after the removal of the disability." KRS § 413.170(1). It is unclear whether his mother's guardianship continued for any length of time or whether it was terminated when he regained his ability to communicate. Nonetheless, the record establishes that Gray's condition improved over time. In fact, Gray's affidavit states that he was moved to a convalescent home on April 24, 2011,[9] and that he returned home on May 17, 2011. [Record No. 15-1 ¶¶ e, f] And the only allegation in the Amended Complaint regarding Gray's ongoing condition is that he "continues to be on many medications, has high blood pressure, hearing and vision loss and partial paralysis in connection with the stroke, and depression." [Record No. 8 ¶ 12] Although the Fayette Circuit Court's competency finding is not dispositive, it does serve as further evidence that Gray's condition improved. Moreover, when entering his guilty plea in the underlying state criminal action, Gray signed a document which included the following representation to the court: "I am not now suffering from or being treated for any mental condition." [Record No. 13-3, p. 1] Finally, as the defendants point out, Gray is "proceeding in his own name in this action, and not by [the] guardian or next friend procedures set forth in Rule 17." [Record No. 12, p. 9]

In short, there is "nothing in the record to suggest that [Gray] was of unsound mind through" February 18, 2012, nearly a year after his injury. *Anderson v. Speedway SuperAmerica,*

---

9       The affidavit lists this date as April 24, 2013. [Record No. 15-1 ¶ 3] This appears to be a typo, as it does not fit within the time line otherwise described in the affidavit.

*LLC*, No. 05-57-DLB, 2007 WL 710164, at *2 (E.D. Ky. Mar. 6, 2007); *see Smith v. Gaines*, No. 2005-CA-000339-MR, 2005 WL 3005350, at *1 (Ky. Ct. App. Nov. 10, 2005) (refusing to find that statute of limitations was tolled where plaintiff failed to "proffer hard evidence that he has been rendered incapable of carrying on the day-to-day affairs of human existence" (internal quotation marks omitted)).  In summary, Gray has failed to meet his burden of demonstrating that the statute of limitations was tolled until within a year before he filed suit against the defendants.  As a result, his Eighth Amendment claims are time-barred.

### B.     Count II – Unlawful Identification and Search

Count II of the Amended Complaint contains a claim that the defendants violated Gray's Fourth Amendment due process rights through the allegedly unlawful identification procedure and resulting unlawful search.  The defendants assert that the statute of limitations commenced on May 20, 2010 — the date that the witness identified Gray as the robbery suspect.  However, Gray maintains that he did not have reason to know of the constitutional injury until April 18, 2012, when he read an article in the Lexington Herald Leader regarding an investigation into Officers Adams' and Persley's previous use of "improper identification procedures."  [Record No. 11, p. 3]  Further, he again argues that the statute of limitations for this claim was tolled under KRS §§ 413.170 and 413.190.

The Court rejects Gray's assertion that his Fourth Amendment claims accrued on April 18, 2012.  Such claims generally accrue on "the date of the alleged illegal search and seizure." *Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008).  Therefore, for the reasons

discussed above, Gray was on notice to investigate his claims as late as May 20, 2010.[10] [Record No. 8 ¶¶ 8-10]  Further, the defendants have established that Gray was aware of his alleged constitutional injury as well as the identity of the responsible parties.  On November 3, 2010, Gray filed a motion to suppress in his criminal case, which specifically challenged the identification procedure used by the officers.  Gray sought to suppress all items obtained from his apartment as "fruit of the poisonous tree."  [Record No. 10-3]  On November 28, 2011, he requested that the Fayette Circuit Court consider additional evidence that Officers Adams and Persley "apparently were subject to an internal police investigation concerning job performance duties."  [Record No. 10-4, p. 1]  Gray's contention that he did not discover the fact of the defendants' disciplinary proceedings until April 18, 2012, is not supported by the evidence in the record.  Gray either "knew or should have known of the injury which forms the basis of" his Fourth Amendment claims by November 28, 2011, at the very latest.[11]  *Ruff*, 258 F.3d at 500.

Gray's assertion that his Fourth Amendment claim was tolled under KRS § 413.170 is likewise unavailing.  An intervening disability does not toll the statute of limitations.  *See Kingman's Comm. v. First Nat'l Bank*, 55 S.W.2d 39, 40 (Ky. Ct. App. 1932) ("The running of the statute having started, was not stopped by [the plaintiff's] subsequent disability."); *Fox v.*

---

10      To the extent that Gray seeks to assert a claim for false arrest or arrest without probable cause, such claims accrue "'at the time the claimant becomes detained pursuant to legal process.'"  *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007) (quoting *Wallace v. Kato*, 549 U.S. 384, 397 (2007)).  Gray was arraigned on May 21, 2010.  [Record No. 13-1]

11      In applying November 28, 2011 as the outside date for accrual, the Court assumes for the sake of argument that knowledge of the internal investigation of the officers was necessary for the statute of limitations to begin to run on Gray's claims.  However, it is not at all clear that this conclusion would be warranted.  *See Harper*, 293 F. App'x at 392 n.1; *Fox*, 489 F.3d at 235.

-17-

*Hudson's Ex'x*, 150 S.W. 49, 52 (Ky. Ct. App. 1912) ("[T]his statute only stops the running of the statute of limitation when the person entitled to bring the action 'was at the time the cause of action accrued' laboring under some of the disabilities mentioned in the section."). Because the allegedly unconstitutional identification and search took place on May 20, 2010, the statute of limitations could not have been tolled by Gray's subsequent injury on March 18, 2011.

Gray also argues that the statute of limitations was tolled under KRS § 413.190, again relying on an article from the Lexington Herald Leader to assert that he discovered his cause of action on April 18, 2012. However, there is no evidence to demonstrate or imply that the defendants took any action to conceal or obstruct Gray's claims. *See Greywolf*, 2011 WL 3361342, at *3 ("For the defendant's concealment to toll the running of the statute of limitations, it must hide the plaintiff's cause of action in such a manner that it cannot be discovered by the exercise of ordinary diligence.").

Additionally, the evidence presented establishes that Gray had actual knowledge of the facts underlying his Fourth Amendment claims. As discussed above, Gray filed a motion to suppress in the Fayette Circuit Court on November 3, 2010, which specifically described the identification procedure used in the police investigation of Gray. [Record No. 10-3] In that motion, Gray challenged the identification procedure as unconstitutional and sought the exclusion of any testimony regarding the prior identification, any in-court identification, and any evidence obtained from the search of his apartment. [*Id.*] The court denied the motion on November 23, 2010. [Record No. 13-2] Gray later moved the Fayette Circuit Court to consider additional evidence in support of the suppression issue. Specifically, Gray asked the Court to

take into account the "internal police investigation concerning job performance duties" of Officers Adams and Persley. [Record No. 10-4, p. 1] Thus, the record shows that Gray was aware of the facts underlying the claims contained in Count II by November 28, 2011, at the very latest. The Court concludes that Gray's Fourth Amendment claims are time-barred under KRS § 413.140(1)(a).

In the alternative, the Court finds that these claims are barred by collateral estoppel. In civil actions brought pursuant to § 1983, a federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980).[12] And in Kentucky, "under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings." *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995); *Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. Ct. App. 1991). Specifically, the "judgment in a former action operates as an estoppel . . . as to matters which were necessarily involved and determined in the former action," although it is "not conclusive as to matters which were immaterial or unessential to the determination of the prior action." *Gossage*, 904 S.W.2d at 248 (quoting *Sedley v. City of West Buechel, Ky.*, 461 S.W.2d 556 (Ky. 1970)).

Here, Gray challenged the actions that form the basis of his current claims before the Fayette Circuit Court in a motion to suppress and a later motion to consider additional evidence.

---

12   The Supreme Court in *Allen* noted that there may be an exception "where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim." 449 U.S. at 101. However, it went on to state that this exception is essentially the same as the longstanding principle that collateral estoppel is not available "where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.*

-19-

[Record Nos. 10-3, 10-4]  Thus, Gray was provided a full and fair opportunity to litigate the issues raised in his Amended Complaint.  Moreover, his Fourth Amendment claims were necessarily determined by the Fayette Circuit Court when it denied his motion to suppress. [Record No. 13-2]  Although Gray entered a conditional guilty plea which specifically reserved the right to appeal the court's ruling on the motion to suppress and motion to present additional evidence [Record No. 13-4, p. 2], he later expressly waived that right to appeal on April 11, 2012.  [Record No. 10-2]  Therefore, Gray is "estopped by his guilty plea from now alleging" that the officers used an unconstitutional identification procedure or that they conducted an illegal search and seizure.  *Hemphill v. Haglund*, 45 F. App'x 519, 520 (6th Cir. 2002); *see also Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997) (finding that plaintiff in a § 1983 action was "precluded from relitigating the issue of the validity of his arrest because the state court already determined that the officers had probable cause").

**IV.**

Gray's § 1983 claims for deliberate indifference to serious medical needs and for unlawful search and seizure are time-barred pursuant to KRS § 413.140(a)(1).  Additionally, his Fourth Amendment claims are barred by the doctrine of collateral estoppel.  As a result, the Court will also dismiss the derivative claims contained in Counts III and IV of the Amended Complaint.  For the reasons discussed above, it is hereby

**ORDERED** as follows:

1.  The defendants' Motion to Dismiss [Record No. 9], as converted to a motion for summary judgment, is **GRANTED**.

2.      A separate judgment shall be entered this date.

This 1st day of July, 2013.



**Signed By:**

**_Danny C. Reeves_** *DCR*

**United States District Judge**